**SO ORDERED: September 4, 2026.**

James M. Carr
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE:<br><br>BRANDY NICOLE THARP,<br><br>Debtor. | Case No. 25-02852-JMC-13 |
| JARED THARP,<br><br>Plaintiff,<br><br>v.<br><br>BRANDY NICOLE THARP,<br><br>Defendant. | Adversary Proceeding No. 25-50067 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS ADVERSARY PROCEEDING came before the Court for a bench trial on January 22, 2026 (the "Trial"). Plaintiff Jared Tharp ("Jared") appeared by counsel Michael Ghosh. Defendant/debtor Brandy Nicole Tharp ("Brandy") appeared by counsel Harold W. Grigdesby. At the conclusion of the Trial, the Court invited the parties to submit proposed findings of fact and conclusions of law and took the matter under advisement.

The Court, having reviewed and considered the evidence presented at the Trial and the other matters of record in this adversary proceeding, having weighed the credibility of the witnesses, having heard and considered the presentations and arguments of counsel at the Trial and in their respective proposed findings of fact and conclusions of law, and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

**Findings of Fact**

The Court makes the following findings of fact:

1. Jared and Brandy were married on August 3, 2019. They have two minor children. (Ex. 1, p. 13.)

2. Brandy filed a complaint for divorce on April 23, 2020, and Jared filed a counter-complaint for divorce on September 17, 2020, in the Chancery Court of Knox County, Tennessee (the "Divorce Court") under Cause No. 200075-1 (the "Dissolution Case"). (Ex. 1, p. 13.)

3. The Dissolution Case involved, among other things,[1] issues related to child custody matters affecting the well-being and best interests of the parties' minor children, coparenting time, guardian *ad litem* recommendations and paternal grandmother's involvement in coparenting time. (Ex. 1, pp. 13-25; Ex. 5, pp. 1-2.)

4. As part of the Dissolution Case, the Divorce Court issued an Order on August 1, 2023, adopting and approving a Permanent Parenting Plan that established Jared as Primary Residential Parent (*i.e.*, custodial parent) of the parties' minor children. (Ex. 1, pp. 1-12, in particular p. 3, part I.A and p. 9, part IV.)

---

[1] For example, the Court heard evidence regarding coordination between Jared's Dissolution Case counsel and Jared's criminal case counsel, as well as an action separate from the Dissolution Case involving a protective order.

5. Child support matters were addressed in the Dissolution Case by the Child Support Magistrate. (Ex. 1, p. 1.)

6. The Dissolution Case did not substantially involve the division or allocation of marital property. (Ex. 1, p. 14.)

7. On October 20, 2023, Jared's Dissolution Case counsel, C. Scott Taylor, filed with the Divorce Court a *Supplemental Affidavit of Attorney Fees and Expenses* (the "Taylor Affidavit"), along with billing statements, showing a total amount of fees and expenses incurred by Jared in the litigation from April 21, 2020 through June 30, 2023 of $114,334.38. (Ex. 3, pp. 1-72, in particular p. 4.)

8. On October 31, 2023, the Divorce Court conducted a hearing in the Dissolution Case. Following that hearing, on November 20, 2023, the Divorce Court issued an *Order Granting Attorney's Fees* (the "Fee Order"). The Fee Order obligates Brandy to pay $65,000 to Jared to recompense him for reasonable attorney fees and litigation expenses he incurred in the Dissolution Case (the "Attorney Fees"). The Divorce Court awarded the Attorney Fees under the factors articulated in *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980) and "Tenn. R. Sup. Ct. 1.5". (Ex. 4.)

9. On May 16, 2025, Brandy filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.

**<u>Conclusions of Law</u>**

A. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact, to support the judgment of the Court.

B. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the General Order of Reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984.

C. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

D. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

E. "[E]xceptions to discharge are to be [construed] strictly against a creditor and liberally in favor of the debtor. … However, the underlying policy of the provision exempting [domestic support obligations] from discharge 'favors enforcement of familial support obligations over a "fresh start" for the debtor.' " *Trentadue v. Gay (In re Trentadue)*, 837 F.3d 743, 749 (7th Cir. 2016) (internal citations omitted).

F. "[A] party seeking to establish an exception to discharge bears the burden of proof." *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 973 (7th Cir. 1998) (citation omitted).

G. "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

***Dischargeability under 11 U.S.C. § 523(a)(5)***[2]

H. Section 523(a) provides, in relevant part:

> A discharge under section 727 … or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> …
>
> (5) for a domestic support obligation … .

I. Section 101(14A) defines a "domestic support obligation" ("DSO") as:

> a debt … that is –
>
> (A) owed to or recoverable by –
>
> (i) a spouse, former spouse, or child of the debtor …
>
> (B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor ... without regard to whether such debt is expressly so designated;
>
> (C) established ... by reason of applicable provisions of –

[2] Unless otherwise noted, all statutory references hereinafter are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(i) a separation agreement, divorce decree, or property settlement agreement; [or]
(ii) an order of a court of record
... ; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor … for the purpose of collecting the debt.

J. To resolve this adversary proceeding, the Court must decide whether the Attorney Fees constitute a debt that is "in the nature of support" as set forth in § 101(14A)(B).[3]

K. "Determining whether an attorney fee award is 'in the nature of … support' is a question of federal bankruptcy law, not state law. As such, [the court is] 'not bound by the labels attached to the obligation' under state law." *Trentadue*, 837 F.3d at 748 (internal citations omitted).

L. To determine the nature of the Attorney Fees, the Court will look to the intent of the parties and the Divorce Court. *In re Coil*, 680 F.2d 1170, 1172 (7th Cir. 1982) (citing *In re Woods*, 561 F.2d 27 (7th Cir. 1977)) (discussing the intent inquiry for DSOs in the divorce decree context). Where, as here, the debt in question was liquidated by a state court judgment, "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Brown v. Felsen*, 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2213 (1979). Rather, the Court may look beyond the record of the Dissolution Case and the Fee Order to seek to determine the intent of the parties and the Divorce Court. The Court's inquiry into intent is not unbounded – the decision of the Divorce Court is conclusive on the issues decided in the Dissolution Case, consistent with the principles of issue preclusion and the *Rooker-Feldman* doctrine.

---

[3] There is no dispute between the parties as to the requirements set forth in § 101(14A)(A) or (C). Brandy suggested that the requirement in § 101(14A)(D) was not met because Jared voluntarily assigned a portion of his claim for the Attorney Fees to his mother. The evidence was not credible or convincing that such an assignment was made.

M. The Divorce Court expressly based the Fee Order on *Connors v. Connors*, 594 S.W.2d 672 (Tenn. 1980) (hereafter, "*Connors*"). In *Connors*, the Tennessee Supreme Court rejected the notion that attorney fees awarded in a Tennessee dissolution action should be based on an alleged "ten percent rule", by which fees were calculated as a percentage of alimony awarded. Instead, the Tennessee Supreme Court announced that the reasonableness of fees awarded in divorce proceedings should be based on a six-factor text. *See Connors*, 594 S.W.2d at 676. The six-factor analysis the Divorce Court used to determine that the $65,000 Attorney Fees award was reasonable does not definitively answer the question of what portion of the Attorney Fees was in the nature of support.

N. The Fee Order lacks language describing the award as "support," "alimony" or "maintenance". Jared contends that the Attorney Fees were awarded in part pursuant to Tennessee Code Annotated § 36-5-103(c). That statute allows the prevailing party to recover attorney fees in matters "to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children … ." However, the Fee Order does not recite that statute as a basis for the Attorney Fees award.

O. The Taylor Affidavit set forth all of the attorney fees and expenses incurred by Jared in the Dissolution Case with respect to all issues involved in the Dissolution Case. The Court's review of the Taylor Affidavit and attached billing statements, as well as consideration of the credible testimony and documentary evidence, leads to the conclusion that the issues involved were more than just child support and custody.

P. The Attorney Fees are intertwined with proceedings affecting the parties' minor children – to some level. There is a sharp factual dispute as to what portion of the $114,334.38 total amount of attorney fees incurred by Jared with respect to the Dissolution Case from

April 21, 2020 through June 30, 2023 are so intertwined – Brandy's proposed findings of fact and conclusions of law suggested that $17,340.75 of the total fees Jared incurred "can be traced to child support or custody matters". Jared's proposed findings of fact and conclusions of law suggested that approximately $75,438.40 of the total fees Jared incurred "are in the nature of support as they were incurred in connection with child support, visitation, and custody proceedings".

Q. The Court concludes that most of the Attorney Fees were incurred in connection with child support, visitation and custody proceedings, constitute a DSO pursuant to § 101(14A) and shall be excepted from discharge pursuant to § 523(a)(5) because: (a) they are a debt owed by Brandy to Jared; (b) they are in the nature of support of the parties' children; and (c) they were established by reason of applicable provisions of an order (the Fee Order) by a court of record (the Divorce Court).[4]

R. The Court concludes that Brandy's obligation to pay the Attorney Fees is <u>partially</u> a DSO as defined in § 101(14A): $50,000 represents such <u>part</u> of the Attorney Fees, and that amount of her debt to Jared is excepted from discharge pursuant to § 523(a)(5).

**<u>Decision</u>**

Based on the foregoing, the Court concludes that $50,000 of the Attorney Fees is excepted from discharge pursuant to § 523(a)(5).

The Court will enter judgment in favor of Jared and against Brandy consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #

---

[4] Arrangements among Jared, Jared's mother and/or Jared's Dissolution Case counsel for the payment of Jared's counsel's fees in connection with the Dissolution Case are not relevant to a determination of whether the Attorney Fees are excepted from discharge. Even if they were, the testimony was not clear or credible with respect to the payment arrangements, purported gift and/or purported loan, other than counsel's recitation of the balance still owed to his firm by Jared.